UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
TRUSTEES OF METAL POLISHERS LOCAL    :
8A-28A FUNDS and THE INTERNATIONAL   :
UNION OF PAINTERS and ALLIED TRADES; :
METAL POLISHERS PRODUCTION AND       :      **REPORT AND**
NOVELTY WORKERS LOCAL UNION 8A-      :      **RECOMMENDATION**
28A/DISTRICT COUNCIL 9,              :
                                     :      19-CV-5120 (ENV)(PK)
                  Plaintiffs,        :
                                     :
             -against-               :
                                     :
KENNY BUILDING SERVICES, INC. a/k/a  :
KENNY BUILDING MAINTENANCE CORP.,    :
                                     :
                  Defendant.         :
-------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Trustees of the Metal Polishers Local 8A-28A Funds (the "Trustees") and The International Union of Painters and Allied Trades; Metal Polishers Production and Novelty Workers Local Union 8A-28A/District Council 9 (the "Union") (collectively, the "Plaintiffs") brought this action against Defendant Kenny Building Services, Inc., a/k/a Kenny Building Maintenance Corp. (the "Defendant") for violation of the Employment Retirement Income Security Act ("ERISA") and a breach of labor contract claim under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"). (*See* Complaint, Dkt. 1.) Plaintiffs have filed a Motion for Default Judgment seeking injunctive relief to compel an audit, damages in the form of unpaid contributions, and attorneys' fees. ("Motion," Dkt. 14.)

The Honorable Eric N. Vitaliano referred the Motion to the undersigned for a report and recommendation. For the reasons stated herein, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

I. **Factual Background**

The following facts are taken from Plaintiff's Complaint ("Compl.," Dkt. 1), the Declaration of Joseph Ramaglia ("Ramaglia Decl.," Dkt. 19), the Supplemental Affirmation of Lauren M. Kugielska ("Kugielska Aff.," Dkt. 20), and Exhibits in support of the Motion (Dkt. 18 – 22).

The Union is a labor organization representing employees in an industry affecting commerce. (Compl. ¶ 5.) It maintains an office in Queens County, New York. (*Id.* ¶ 9.)

The Trustees are the fiduciaries of jointly administered, multi-employer labor management trust funds established and maintained pursuant to collective bargaining agreements in accordance with 29 U.S.C. § 186(c)(5). (*Id.* ¶ 5.) The trust funds here are the Local 8A-28A 401(k) Retirement Fund and the Local 8A-28A Welfare Fund (collectively, the "Funds"). (Ramaglia Decl. ¶ 4.) The Funds are employee benefit plans under 29 U.S.C. § 1002(3) and multi-employer plans under 29 U.S.C. § 1002(37). (Compl. ¶ 5; *see also* Ramaglia Decl. ¶ 4.) The Funds' principal offices are in Queens County, New York. (Compl. ¶ 7.)

The Funds are established and maintained by the Union and various employers pursuant to a collective bargaining agreement ("CBA," Dkt. 19-4) and trust indentures. (Ramaglia Decl. ¶ 5.)

The CBA governs employer contributions for retirement and fringe benefits (Compl. ¶ 6; CBA at 12-13, Art. 17-18), and requires participating employers to pay into the Funds. (CBA at 14, Art. 19-1, 19-2, 19-3.)

The CBA grants the Trustees the right to conduct an audit of an employer's "payroll, wage, and other relevant records … for the purpose of determining the accuracy of contributions" to the Funds. (CBA at 14, Art. 19-5.) The CBA allows the Funds to "take whatever steps are necessary to secure compliance with" the CBA, and makes employers "liable for all costs of collecting the payments

2

due, together with the attorneys' fee and such penalties as may be assessed by the Trustees" of the Funds." (CBA at 14, Art. 19-6.)

The Funds' trust agreements also have provisions that allow the Trustees to conduct an audit of an employer's books and records. (Ramaglia Decl. ¶ 5; "Retirement Fund Trust Agreement," Dkt. 19-1 at 17-18, Art. VII, § 1(b); Ramaglia Decl. ¶ 6; "Welfare Fund Trust Agreement," Dkt. 19-2 at 18, Art. VII, § 1(b).) The trust agreements contain provisions that require the Trustees to adopt "Delinquency Collection Policy and Rules," which are incorporated into the trust agreements. (Ramaglia Decl. ¶¶ 5,6; Dkt. 19-1 at 18, Art. VII § 2; Dkt. 19-2 at 18, Art. VII § 2.) The Trustees' Policy for Collection of Delinquent Contributions allows the Funds to audit an employer's records. (Ramaglia Decl. ¶ 7; "Policy for Collection of Delinquent Contributions," Dkt. 19-3 at 1, § 1-2.)

Defendant is an "employer" under ERISA and an employer in an industry affecting commerce under the LMRA. (Compl. ¶ 11.) Defendant is incorporated under the laws of the State of New York and has its principal place of business in Orange County, New York. (*Id.* ¶ 11.)

The Union and Defendant entered into the CBA on June 1, 2014 for an initial effective period through May 31, 2019. (Ramaglia Decl., ¶ 8; CBA at 23.) The CBA automatically renews for subsequent one-year periods every May 31 unless a party to the agreement serves written notice terminating the agreement more than 30 days before May 31. (CBA at 23, Art. 41.) Pursuant to the CBA, Defendant agreed to be bound by declarations of trust adopted by each of the Funds. (Ramaglia Decl. ¶ 9; CBA at 14, Art. 19-1.)

Defendant "has failed and refused to allow an audit by the Funds for the effective period of the [CBA]." (Compl. ¶ 16; Ramaglia Decl. ¶ 12; Kugielska Aff. ¶ 17.)

II.  **Procedural Background**

Plaintiffs filed the Complaint on September 9, 2019. (Compl.) Plaintiffs served a copy of the Summons and Complaint on Defendant on October 9, 2019 through the New York Secretary of State

3

consistent with N.Y. Bus. Corp. Law § 306(b). (Dkt. 9., Dkt. 15-2.) Plaintiff requested a certificate of default (Dkt. 10, 11, 12), which the Clerk granted on November 12, 2019. (Dkt. 13.) Plaintiff moved for default judgment and provided supplemental affidavits and briefing. (Dkts. 14, 15, 16, 19, 20, 21.)

## DISCUSSION

### I.   Default Judgment Standard

Rule 55 of the Federal Rules of Civil Procedure prescribes a two-step process for entry of a default judgment. First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a). The plaintiff may then move the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2).

A defendant's default does not entitle a plaintiff "to a default judgment as a matter of right." *GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010). To establish entitlement to default judgment, the plaintiff must demonstrate proper service of the summons and complaint. *See Advanced Capital Commercial Group, Inc. v. Suarez*, 09-cv-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). "Before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (internal quotations and alterations omitted). And Plaintiff must establish compliance with the procedural requirements of Local Civ. R. 55.2(c).

On a defendant's default, the court must determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). "[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). In considering a motion for default judgment, a court accepts a plaintiff's "factual allegations as true and

4

draw[s] all reasonable inferences in [the plaintiff's] favor." *Finkel*, 577 F.3d at 84. However, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "The plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, 18-cv-06476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *R&R adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020).

A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established and the amount of money potentially involved." *Klideris v. Trattoria El Greco*, 10-cv-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted*, 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012).

## II. Jurisdiction

### A. Subject Matter Jurisdiction

The Court has original jurisdiction over Plaintiffs' ERISA claim pursuant to 29 U.S.C. § 1132(e)-(f) and 28 U.S.C. § 1331. The Court has original jurisdiction over Plaintiffs' allegations relating to breach of labor contract pursuant to 29 U.S.C. § 185(a) and 28 U.S.C. § 1331.

### B. Service on the Defendant

Plaintiff alleges that Defendant is a New York corporation. (Compl. ¶ 11.) Plaintiff properly served Defendant by delivering and leaving a copy of the Summons and Complaint with the New York Secretary of State. *See* N.Y. Bus. Corp. L. § 306(b)(1); Fed R. Civ. P. 4(h)(1)(B). (Dkt. 9, Dkt. 15-2.)

### C. Personal Jurisdiction

"Serving a summons ... establishes personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A).) New York State has general jurisdiction over its residents. *See Brown v. Lockheed Martin*

*Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016). It also has general jurisdiction over corporations formed under its laws and operating within the state. *See Francis v. Ideal Masonry, Inc.*, 16-cv-2839 (NGG) (PK), 2018 WL 4292171, at *3 (E.D.N.Y. Aug. 3, 2018), *R&R adopted*, 2018 WL 4288625 (E.D.N.Y. Sept. 7, 2018). Defendant is a New York corporation; the Court therefore has personal jurisdiction over Defendant.

### III. Procedural Compliance with Local Civil Rules 7.1 and 55.2

Local Civil Rule 7.1(a) requires parties making a motion to the Court to include a Notice of Motion, a Memorandum of Law, and, if necessary, supporting affidavits and exhibits. Local Civil Rule 55.2(b) requires that an application for default judgment be accompanied by "(1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment." Local Civil Rule 55.2(c) requires proof of mailing of the entire application for default judgment to defendant.

Although Plaintiff filed Certificates of Service that it sent copies of the Motion and "Supporting Documents" and the Memorandum of Law to Defendant (Dkts. 18, 22), those documents do not include a copy of the Clerk's certificate of default. Nevertheless, "the Second Circuit has made it clear that the court has broad discretion to excuse noncompliance with Local Rules." *Gustavia Home, LLC v. Vaz*, 17-cv-5307 (ILG) (RER), 2019 WL 3752772, at *4 (E.D.N.Y. Aug. 8, 2019), *aff'd*, 2020 WL 5868286 (2d Cir. Oct. 2, 2020); *see also Ass'n for Retarded Citizens of Connecticut, Inc. v. Thorne*, 68 F.3d 547, 554 (2d Cir. 1995) ("The district court's inherent discretion to depart from the letter of the Local Rules extends to every Local Rule regardless of whether a particular Local Rule specifically grants the judge the power to deviate from the Rule.") Indeed, there is "a line of cases that have excused a plaintiff's failure to strictly comply with Local Civil Rule 55.2(b)…" *Guanglei Jiao v. Shang Shang Qian Inc.*, 18-cv-5624 (ARR)(VMS), 2020 WL 6370148, at *7 (E.D.N.Y. Aug. 11, 2020), *R&R adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (collecting cases). By

6

mailing the Motion and supporting papers to Defendant, Plaintiff put Defendant on notice of its default and Plaintiffs' intention to seek a judgment against it. *See Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Coastal Envtl. Grp. Inc.*, 18-cv-5791 (LDH)(SJB), 2019 WL 5693916, at *3 n.7 (E.D.N.Y. Aug. 30, 2019) ("Because the non-compliance here is minor and would not prevent [the defendant] from receiving notice of the motion, Plaintiffs' failure to comply fully with Local Rule 55.2 is excused"). Accordingly, Plaintiffs' non-compliance is excused.

## IV.  Liability

Plaintiffs allege that Defendant violated ERISA and the LMRA by failing to permit and cooperate in an audit of Defendant's records. (*See* Compl. ¶¶ 19, 26.)

### A.  The Employment Retirement Income Security Act

ERISA applies to "any employee benefit plan if it is established or maintained [] by any employer engaged in commerce or in any industry affecting commerce; or [] by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce." 29 U.S.C. § 1003(a). ERISA requires employers to "'maintain records with respect to each of his employees sufficient to determine the benefits due' [under an employee benefit plan] and to make records 'available for examination.'" *Annuity, Welfare , & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Getty Contracting, LLC*, 18-CV-1450 (CBA), 2018 WL 7076168, at *3 (E.D.N.Y. Oct. 5, 2018), *R&R adopted*, 2018 WL 7076162 (E.D.N.Y. Dec. 12, 2018) (quoting 29 U.S.C. §§ 1027, 1059(a)(1)). Plan fiduciaries may bring a civil action for ERISA violations and/or for violations of a collective bargaining agreement. 29 U.S.C. § 1132(a)(3).

"'Commerce' means trade, traffic, commerce, transportation, or communication between any State and any place outside thereof." 29 U.S.C. § 1002(11). "Industry affecting commerce" includes

7

businesses or industries "in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce, and includes any activity or industry 'affecting commerce' within the meaning of the [LMRA]." 29 U.S.C. § 1002(12); *see Annuity, Pension, Welfare, Training & Labor Mgmt. Cooperation Tr. Funds of Int'l Union of Operating Engineers, Local 14-14B, AFL-CIO by Christian v. Coastal Envtl. Grp. Inc.,* 18-cv-5773 (AMD)(ST), 2019 WL 4603805, at *6 (E.D.N.Y. Sept. 5, 2019), *R&R adopted*, 2019 WL 4602851 (E.D.N.Y. Sept. 23, 2019) (bare allegation of 'affecting commerce' sufficient to establish liability under ERISA and LMRA). An employer is "any person acting directly as an employer … in relation to an employee benefit plan." 29 U.S.C. § 1002(5). An "employee benefit plan" is "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both…" 29 U.S.C. § 1002(3). A plan fiduciary includes persons with "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

Here, the Funds are employee benefit plans under the statute. (*See* Ramaglia Decl. ¶ 4.) The Union is a labor organization representing employees in an industry affecting commerce. (Compl. ¶ 5.) The Funds are employee benefit plans under 29 U.S.C. § 1002(3) and multi-employer plans under 29 U.S.C. § 1002(37). (Ramaglia Decl. ¶ 4.) Defendant is an employer because it has entered into an agreement to participate in the plans. (*See* Ramaglia Decl. ¶ 8; CBA, at 23.) The Trustees are fiduciaries with the right to bring a civil action for ERISA violations and violations of the CBA. (*See* Ramaglia Decl. ¶ 4, Compl. ¶ 5.) The CBA, the Welfare and Retirement Trust Agreements, and the Policy for Collection of Delinquent Contributions all require Defendant to submit to an audit of its records. (CBA at 14, Art. 19-5; Ramaglia Decl. ¶ 5; Retirement Fund Trust Agreement, Dkt. 19-1 at 17-18, Art. VII, Section 1(b); Ramaglia Decl. ¶ 6; Welfare Fund Trust Agreement, Dkt. 19-2 at 18, Art. VII, Section 1(b).; Ramaglia Decl. ¶ 7; Policy for Collection of Delinquent Contributions, Dkt. 19-3 at 1, § 1-2.) Defendant "failed to comply with the Funds' request to audit its books and records." (Ramaglia Decl. ¶ 12; *see also* Compl. ¶ 16, Kugielska Aff. ¶ 17.)

Accepting these allegations as true, Plaintiffs have established Defendant's liability under ERISA for failing to permit and cooperate in an audit of its records.

### B. Labor Management Relations Act

The LMRA grants "a federal cause of action for 'violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce.'" *Int'l Union of Operating Engineers LLC*, 2018 WL 7076168, at *3, *R&R adopted*, 2018 WL 7076162 at *3 (quoting 29 U.S.C. § 185(a)). "An employer's breach of a collective bargaining agreement and/or trust agreement, by failing to comply with an audit request, is actionable under the LMRA." *Id.* (collecting cases).

The same facts that create liability under ERISA also establish that the CBA is a contract between an employer and a labor organization under the LMRA. Because the CBA, the Trust Agreements, and the Policy for Collection of Delinquent Contributions all require Defendant to submit to an audit of its records, Defendant's failure to do so constitutes a breach of the CBA actionable under the LMRA.

### V. Requested Relief

Plaintiffs seek relief for Defendant's violations of ERISA and the LMRA in the form of (a) an injunction requiring Defendant to permit and cooperate in an audit of Defendant's books and records; (b) a damages award against Defendant for any unpaid contributions, including principal plus interest,[1] liquidated damages at twenty percent of the amount due, and attorneys' fees and the cost of the audit; and (c) attorneys' fees and costs in bringing this action.

### A. Injunctive Relief

"In a successful action to enforce ERISA provisions, an ERISA plan may recover 'such other

---

[1] The Complaint requests interest "calculated at 2% percent [sic] over prime per month from the date of delinquency." (Compl. at 6.) The Memorandum of Law in support of the motion requests "interest at a rate of 9% per annum of the principal amount due." (Dkt. 21 at 7.) The Proposed Order does not specify an interest rate. (Dkt 14-1 at 2.)

9

legal or equitable relief as the court deems appropriate.'" *Local 355 United Serv. Workers Union, Int'l Union of Journeymen & Allied Trades v. Aircon Enterprises, Inc.*, 18-cv-1849 (LDH)(LB), 2018 WL 9945700, at *4 (E.D.N.Y. Nov. 28, 2018) (citing *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Management Cooperation, Pension and Welfare Funds v. Tri-State Acoustics Corp.*, 13-cv-05558, 2014 WL 4537481, at *9 (E.D.N.Y. Sept. 11, 2014)) (quoting 29 U.S.C. § 1332(g)(2)(E)). "Such relief includes injunctions, which may be employed to compel a defendant to comply with an audit pursuant to a CBA." *Local 355 United Serv. Workers Union,* 2018 WL 9945700, at *4 (citing *Trustees of Empire State Carpenters Annuity*, 2014 WL 4537481, at *9; *see also Int'l Union of Operating*, 2018 WL 7076168, at *4 (collecting cases). The LMRA allows for the same relief. *See id.*

As described above, the CBA, the Trust Agreements, and the Policy for Collection of Delinquent Contributions all require Defendant to submit to an audit of its records. Defendant has failed to do so. The undersigned therefore respectfully recommends that an injunction be granted and Defendant be directed to submit to such an audit and produce the relevant records as required under the CBA and Trust Agreements.

**B.    Damages**

Plaintiffs also request a judgment for unpaid contributions owed, liquidated damages, interest, attorneys' fees and auditors' fees, court costs and disbursements. The Trustees' Policy for Collection of Delinquent Contributions, incorporated into the Funds' Agreements and into the CBA, provides for these remedies. (Dkt. 19-3 at 10.) In actions to recover unpaid contributions, ERISA provides for similar recoveries. *See* 29 U.S.C. § 1132(g)(2). Here, however, there has been no determination – whether through an audit, Defendant's default in this action, or evidence provided in support of the Motion – that Defendant owes any contributions. The Complaint recognizes the uncertainty that any contributions are owed, stating, "Upon information and belief, as a result of work performed by the individual employees of the Employer pursuant to the Agreement, there *may* be due and owing to

10

the Funds from the Employer, contribution reports, [and] fringe benefit contributions for the effective period of the Agreement." (Compl. ¶ 14) (emphasis added.) Thus "in the circumstances presented here, it is premature to order these forms of relief, as the audit has not been conducted and a determination cannot be made as to whether any contributions are due and, if so, in what amounts." *Annuity, Pension, Welfare & Training Funds of Int'l Union of Operating Engineers Local 14-14B, AFL-CIO v. Heritage Steel Corp.*, 07-cv-4294 (FB), 2008 WL 4222522, at *2 (E.D.N.Y. Sept. 11, 2008); *cf. Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of the Int'l Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO ex rel. Callahan v. Lori Contracting, Inc.*, 14-cv-2467 (RJD)(MDG), 2015 WL 1321672, at *3 (E.D.N.Y. Mar. 5, 2015), *R&R adopted*, 2015 WL 1359072 (E.D.N.Y. Mar. 24, 2015) (recommending that Court grant request to allow Plaintiff opportunity to seek additional monetary relief if audit uncovers deficiency).

The undersigned therefore recommends that the Motion be denied as to damages but that Plaintiffs be granted leave to seek an amended judgment for any deficiency and related damages.

### C.   Attorneys' Fees and Costs

ERISA provides for a discretionary award of attorneys' fees and costs for any violation of the statute. 29 U.S.C. § 1132(g)(1). The Trustees' Policy for Collection of Delinquent Contributions, which is incorporated into the CBA, provides for attorneys' fees and costs associated with collection and enforcement efforts. (CBA at 14, Art. 19.6 ("Employer shall be liable for all costs of collecting the payments due…"), Art. 19.1, 19.2, 19.4 (incorporating Declarations of Trust and acts pursuant to them), Policy for Collection of Delinquent Contributions at 10, §§ 5-3 (providing for attorneys' fees associated with collection efforts) and 5-5 (providing for all costs incurred in pursuing legal action to collect delinquent fees or enforce right to audit).

In order to justify an award of attorneys' fees, Plaintiffs must provide contemporaneous time records. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986). Plaintiffs have done so. (Dkt. 20 at 8-

11

9.) The attorneys' fees and costs must also be "reasonable." *See Riley v. City of New York*, 10-cv-2513 (MKB), 2015 WL 9592518, at *1 (E.D.N.Y. Dec. 31, 2015). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quotation in original); *see also Scharff v. Cty. of Nassau*, 10-cv-4208 (DRH)(GRB), 2016 WL 3166848, at *3 (E.D.N.Y. May 20, 2016), *R&R adopted*, 2016 WL 3172798 (E.D.N.Y. June 6, 2016) (*quoting Millea*, 658 F.3d at 166). To calculate the lodestar, the Court determines a reasonable hourly rate and a reasonable number of hours. *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 203 (E.D.N.Y. 2006). "District courts have broad discretion to determine both the reasonable number of compensable hours and the reasonable hourly rate." *Id.* The party applying for fees must support the hourly rates it claims with evidence, for example, of counsel's expertise and prevailing market rates. *See Riley*, 2015 WL 9592518, at *2.

Plaintiffs seek $3,825.00 in attorneys' fees and $467.00 in costs. (Kugielska Aff. ¶ 26(a) ; Dkt. 21 at 6-7.)

    1.    <u>Hourly Rate</u>

To determine a reasonable hourly rate, the Court considers "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotations omitted). The "community" is the "district in which the reviewing court sits." *Scharff,* 2016 WL 3166848, at *4 (*quoting Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011)). "The reasonable hourly rate is the rate a paying client would be willing to pay ... bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The Court must also "bear in mind *all* of the case-specific variables that [the

12

Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190 (emphasis in original). Those factors include the attorney's experience and expertise. *See Brady*, 455 F. Supp. 2d at 204; *Chen v. Cty. of Suffolk*, 927 F. Supp. 2d 58, 71 (E.D.N.Y. 2013). The fee applicant has the burden of justifying the requested rate as reasonable. *See Scharff*, 2016 WL 3166848, at *4.

In recent years, Courts in this district have awarded fees in ERISA cases at an hourly rate of $300 to $350 for partners, $200 to $300 for associates, and up to $90 for non-attorney support staff. *See UFCW Local 174 Pension Fund v. 5600 Mkt. Corp.*, 17-CV-5789 (CBA) (CLP), 2018 WL 4403394, at *9 (E.D.N.Y. Aug. 16, 2018), *R&R adopted as modified*, 2018 WL 4388452 (E.D.N.Y. Sept. 14, 2018) (collecting cases).

Plaintiffs only seek fees for Attorney Kugielska, who was admitted in this District in 2014. (Dkt. 20 at 7.) She does not provide her personal experience in ERISA or LMRA matters. Her Affirmation also does not indicate whether she is an associate or partner, but she describes herself as "associated with the firm Barnes, Iaccarino & Shepherd LLP." (Dkt. 20 at 1.) Although her application is sparse, because she requests an hourly rate in the midpoint of associates in this district, the undersigned finds that these are reasonable hourly rates.

2.  *Hours Billed*

When calculating the lodestar, "the district court should exclude excessive, redundant or otherwise unnecessary hours...." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999). Courts routinely reduce requested fee awards when attorneys perform tasks like "review[ing] electronic orders and case management orders, [and] fil[ing] documents on ECF . . . [which] should [be] conducted by a paralegal." *Callari v. Blackman Plumbing Supply, Inc.*, 11-cv-3655 (ADS)(AKT), 2020 WL 2771008 at *12 (E.D.N.Y. May 4, 2020), *R&R adopted*, 2020 WL 2769266 (E.D.N.Y. May 28, 2020). "[T]he court

13

has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Id.* (internal quotations omitted).

Plaintiff's counsel spent a total of 15.30 hours in this matter. Upon examination of the time records, the undersigned finds that several of the entries are administrative, including mailing and scanning documents and researching Defendant's address and incorporation status. (*See* Dkt. 20 at 8-9, entries for Jan. 29, 2019; Feb 19, 2019; Mar. 28, 2019; May 8, 2019.) These entries, totaling 4.50 hours, or almost 30% of the total hours billed, include both administrative work and work properly performed by an attorney (*e.g.*, drafting a demand letter, Dkt. 20 at 8, entry for Jan 29, 2019). Counsel's requested hours should be reduced by 15% to account for the ambiguity in the records as to the time spent on work that should have been performed by paralegals or other staff. The undersigned therefore respectfully recommends that counsel be granted attorneys' fees of **$3,251.25** (hourly rate of $250.00 times requested hours of 15.30 reduced by 15%).

    3.    *Costs*

Plaintiff requests $467 in costs, including $400.00 for the filing fee (mistakenly noted as "paid to the Clerk of the Court of the S.D.N.Y."), and $67.00 for the cost of service on Defendant. (Dkt. 20-2.) The undersigned finds that the requested costs of **$467.00** are reasonable and recommends they be awarded.

## CONCLUSION

For the reasons above, it is respectfully recommended that Plaintiffs' Motion be granted as follows: that the Court (a) issue an order compelling Defendant to submit to an audit of its books and records, and (b) award Plaintiffs **$3,215.25** in attorneys' fees and **$467.00** in costs. It is further recommended that if the audit shows that Defendant owes contributions, Plaintiffs be granted leave to seek recovery of any delinquent contributions owed to the Funds, and to seek additional remedies

under ERISA and the terms of the CBA, Trust Agreements, and Delinquency Collection Policy and Rules.

Plaintiffs are directed to serve this Report and Recommendation on Defendant forthwith and file proof of service on the docket by November 30, 2020. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         November 23, 2020